IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**ANGELA COVINGTON**                                                                    **PLAINTIFF**

**v.**                            **CIVIL ACTION NO. 4:10-CV-213-CWR-FKB**

**TODD KEMP**                                                                     **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Todd Kemp's Motion for Summary Judgment [Docket No. 17], his brief in support thereof and rebuttal, along with a response by Plaintiff Angela Covington. After reviewing the arguments of counsel and the pertinent authorities, the Court finds that the motion must be GRANTED.

**II. BACKGROUND**

On the evening of Friday, December 21, 2007, as his jailers, who were responsible for maintaining custody over Joseph Kostick were handing out medication to other prisoners, Kostick jimmied the lock to his cell and ran out of the front door of the Clarke County Jail. No doubt a danger to the community, Kostick had been convicted of rape/sexual battery and while serving that sentence, he nearly beat to death another inmate. He was now a free man, and the goal of the Clarke County Sheriff Department was to return Kostick to custody. Deposition of Todd Kemp [Docket No. 17-3], at 6-7 and 32-33. To accomplish their mission of capturing Kostick, Clarke County officials initiated their investigation by speaking with John Haney, a co-inmate of Kostick and jail trusty. Deputy Sheriff Jonathan Kufel also enlisted the help of law enforcement agencies in the surrounding counties. *Id*. at 10-11. *See also* Todd

Kemp's Memo. of Auth. in Supp. of Mot. for Summary Judgment [Docket No. 18] at 3.  According to Kemp, Kufel advised him that Haney and information from a cell phone left behind in Kostick's cell indicated that Plaintiff, Angela Covington,"had been in contact with Kostick." Kemp Depo.[Docket No. 17-3] at 3.  *See also* Deposition J. G. Kufel [Docket No. 17-2] at 9-10.  In fact, the investigation logs for the prison showed that Covington had visited Kostick on a number of occasions, and Haney informed Kufel that he allowed Kostick to use his cell phone earlier on the day of the escape and that Kostick had called Covington, who Haney described as Kostick's girlfriend.   [Docket No. 17-2], at 14.  Also, a number provided by Covington on the visitation logs matched a call made to the same on Haney's cell phone.

Armed with the above information, the focus turned to Covington, whom Kemp believed might be an accomplice to Kostick's escape.  Kemp contacted the Lauderdale County Sheriff's Department, which, in turn, dispatched two officers to inform Covington that Clarke County officials had some questions for her about Kostick.  When confronted, Covington volunteered to accompany the officers to the Clarke County line where two Clarke County officers then transported her to the CCJ for questioning.  Angela Covington's Memo. of Auth. in Opp. to Def.'s Motion for Summary Judgment [Docket No. 21], at 1 ].

According to Covington, during Kemp's questioning of her, he falsely accused her of knowing the whereabouts of Kostick.  Complaint [Docket No. 1] at ¶ 6.  Furthermore, she says Kemp cursed, threatened, and verbally abused her with the intent of humiliating and embarrassing her before she was placed in the Clark County Jail where she remained for five days, until December 26, 2007.  *Id*.  Covington also  alleges that Kemp refused to attempt to contact a justice court judged for a probable cause hearing during that time, and never notified her as to any criminal charges pending against her.

*Id*. Instead, she was simply told that she was being held on an "investigative hold." *Id*. Moreover, "she was denied towels, blankets, sheets, and other comforts of living." *Id*. at ¶ 7. When she was finally presented to a justice court judge, she was charged with "aiding a felon escapee." *Id*. at ¶ 6. Finally, Covington points out that a $3,500.00 bond prompted her release in the face of a charge for which she was never even indicted. *Id.*

Relying on those assertions, Covington filed this action on December 20, 2010 claiming that Kemp's conduct violated her constitutional rights as guaranteed by "the 4th, 6th and 14th Amendments to the Constitution of the United States, and by 42 USCA Section 1983." *Id*. at ¶ 3. In short, Covington alleges (1) she was falsely arrested; (2) she was not provided an initial appearance within forty-eight (48) hours of her arrest; and (3) she was housed under inhuman conditions of confinement.[1] At the close of discovery, Defendant timely moved for summary judgment.

### III. LEGAL STANDARDS

Though motions for summary judgment are filed frequently, not every case is suitable for such disposition. Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must view the evidence in the light most favorable to the non-moving party. *Abarca v. Metro Transit Authority*, 404 F.3d 938, 940 (5th Cir. 2005). If the moving party "shows that the non-moving party presented insufficient evidence in support of its allegations, 'the non-movant must come forward with specific facts showing a genuine factual issue for trial.'" *Jones v. Lowndes County, Mississippi*, ---F.3d---, 2012 WL 1322914, at *1 (5th Cir. April 18, 2012).

---

[1] The Court finds jurisdictions is proper pursuant to 28 U.S.C. §1331.

Pointing to and setting forth these specific facts is the responsibility of the non-movant, and these facts must consist of more than "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Davis v. Louisville Municipal School District*, 2010 WL 290956, *2 (N.D. Miss. 2010)(quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002)).

Additionally, "the court resolves factual controversies for purposes of summary judgment in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Zisman,* 2008 WL 879726, at *3, *citing Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994). Where there is no proof of contradictory facts, the court will not assume that nonmoving party could or would prove the necessary facts. *Id.*, *citing Wallace v. Texas Tech. University*, 80 F.3d 1042, 1048 (5th Cir. 1996).

This Court is ever mindful that although a useful device, summary judgment "must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989); *Hulsey v. State of Texas*, 929 F.2d 168, 170 (5th Cir. 1991). The jury has the responsibility to assess the probative value of the evidence. As a consequence, a court must step back and not make any credibility determinations, and it must not weigh evidence or draw from the facts legitimate inferences for the movant. *Strong v. The Dept. of Army*, 414 F.Supp.2d 625, 628 (S.D. Miss. 2005).

## IV. ANALYSIS

False Arrest/Unlawful Detention[2]

Covington alleges a false arrest/unlawful detention claim. In order to prevail in a Section 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived her of a right secured by the Constitution of the laws of the United States. *Martin v. Thomas*, 973 F.2d 449, 452-53 (5th Cir. 1992). To sustain a constitutional claim of "unlawful arrest" or "wrongful arrest," a plaintiff must show that she was arrested without probable cause. *Golla v. City of Bossier City*, 687 F.Supp. 2d 645, 658 (W.D. La. 2009)(internal citations omitted). If probable cause exists, "then a Fourth Amendment claim for false arrest is foreclosed." *Fleming v. Livingston County, Ill.*, 674 F.3d 874, 878 (7th Cir. 2012) (internal citation omitted).

"A police officer has probable cause to arrest when, at the moment the decision is made, the facts and circumstances within her knowledge and of which she has reasonably trustworthy information would warrant a prudent person in believing that the suspect had committed or was committing an offense." *Id*. This standard "does not require that the officer's belief be correct or even more likely true than false, so long as it is reasonable." *Id*. Whether the crime actually occurred or whether a suspect is eventually convicted is irrelevant to the probable cause analysis. *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 754 (5th Cir. 2001). Even if probable cause is lacking, any resulting municipal liability under section 1983 still requires proof of three elements: a policymaker; an official policy; and that the policy or custom was the moving force behind the constitutional deprivation. *Robinson v. Saucier*, 2011 WL

---

[2] Covington does not challenge Defendant's contention that her suit is brought against Sheriff Kemp in his official capacity alone. See [Docket No. 18], at 8-9. As such, Covington's official capacity claim is construed as a claim against Clarke County. *Hinson v. Rankin County, Miss.,* Civil Action No. 3:10cv456, 2012 WL 1668875, at *1 (S.D. Miss. May 11, 2012).

7563048 *2 (S.D. Miss. Nov. 24, 2011)(internal citation omitted).  Thus, in the instant matter, in order to find Clarke County liable, Covington would have to prove that Clarke County itself subjected her to a deprivation of rights or caused her to be subjected to such deprivation.  *Hinson*, *supra*, at *2.

Covington argues that with respect to her charge of aiding and abetting a felon, probable cause was lacking, because Kemp simply relied on the fact that "Angela had a phone conversation with Kostick before his escape." [Docket No. 21] at 3, *citing* Kufel Dep.[Docket No. 17-2], at 14-17. Covington later adds, "[Kemp's] articulation of facts upon which the arrest was based was tenuous at best and demonstrates only that Kemp had reasonable cause to want to question Angela, not to incarcerate her for five days and charge her with a bogus felony." [Docket No. 21 at 3].  Conversely, Kemp avers that Covington initially "categorically denied" she had been talking to Kostick prior to Kemp showing her the cell phone which disputed that fact. [Docket No. 18 at 6], *citing* Kemp Dep., at 18-19. In addition, when asked by Covington's counsel at his deposition if he thought Covington was lying about not having talked to Kostic, Kemp responded:

> Yes, sir.  I felt like she was lying the whole time, because she categorically denied the fact that Kostick had been talking to her.  And then I showed her the evidence that I knew that she had been down there visiting him, and I also showed her her phone number on Kostick's phone. *And during the interview, Kostick's phone–I mean, Angela's phone is laying on my desk.  Guess who calls?  Joey Kostick calls on her phone wanting to rendezvous.*  So that reiterated the fact that I knew that they had been talking, and she was trying to help him escape.

Kemp Dep. 18 (emphasis added).

In response, Covington does nothing to shake the foundation for the assertion that probable cause existed. She acknowledges that she volunteered to meet the officers. She takes no issue with the validity of the information the officers claim to have had knowledge of during her questioning.

6

Probable cause existed for the arrest of Covington for aiding and abetting Kostic's escape. "Probable cause exists when the facts available at the time of the arrest would support a reasonable person's belief that an offense has been . . . committed and that the individual arrested is the guilty party." *Brown v. Sudduth*, 675 F.3d 472, 480-81 (5th Cir. 2012)(citation omitted). Although, Covington denied even knowing and having spoken to Kostick, in the hands (and minds) of the officers was information that Covington was his girlfriend (or at least had a close personal relationship with him); that Covington had visited him at the jail on numerous occasions; evidence suggested that a telephone call was made by Kostick to her on the day of the escape; that she lied to the officers when asked about Kostick; and finally that Kostick called her phone just after his escape.[3] As such, there was probable cause to arrest Covington. Assuming *arguendo,* Defendant lacked probable cause to arrest Covington, Covington fails to plead or offer any evidence that any actions promulgated by the County were the moving force behind the violation of her constitutional right not to be arrested without probable cause. Therefore Clarke County is entitled to summary judgment on Covington's claim of false arrest.[4]

---

[3]As the United States Supreme Court explained in *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S.Ct. 795, 800 (2003), "[t]o determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." (citation omitted).

[4]To the extent that Covington alleges that she was unlawfully detained prior to her arrest, she fails to argue through competent summary judgment evidence how her temporary detention was unreasonable. The Supreme Court expressed it is well-settled that not all encounters with the police implicate the Fourth Amendment and "only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may [a court] conclude that a 'seizure' has occurred. *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). Covington makes no mention of how she was restrained from leaving prior to her arrest nor does she make any other showing that she was unlawfully detained.

Duration of Confinement

Covington also claims that Kemp violated her Fourth Amendment rights by detaining her longer than 48 hours without a judicial determination of probable cause. Kemp seeks summary judgment on this claim, and the Court finds Kemp is so entitled.

The undisputed material facts establish Covington was arrested without a warrant. The heart of Covington's lawsuit and arguments against summary judgment is based on the fact that she was detained for more than forty-eight hours before being brought before a judicial officer for her initial appearance. Simply put, "[u]ntil Dec. 26, neither Kemp, Kufel nor anyone else *ever even attempted* to have [her] brought before a judge for initial appearance or to set bond." [Docket No. 21], at 3(emphasis in original).[5] Relying on *Gerstein v. Pugh*, 420 U.S. 103, 124-25 (1975), Covington maintains that she was entitled to a "prompt" probable cause determination by a judicial officer. Here, Covington is correct. The Supreme Court in *McLaughlin*, however, provided guidance in defining "prompt" and adopted the following test:

> Where an arrested individual does not receive a probable cause determination within 48 hours, the calculus changes. In such a case, the arrested individual does not bear the burden of proving an unreasonable delay. Rather, the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance. The fact that in a particular case it may take longer than 48 hours to consolidate pretrial proceedings does not qualify as an extraordinary circumstance. Nor, for that matter, do intervening weekends. A jurisdiction that chooses to offer combined proceedings must do so as soon as is reasonably feasible, but in no event later than 48 hours after arrest.

*County of Riverside v. McLaughlin*, 500 U.S. 44, 57 (1991). *McLaughlin* also warns that "[i]n evaluating whether the delay in an particular case is unreasonable, [ ]courts must allow a substantial

---

[5] Her counsel complains further: "They never drove by an judge's home, even though they do so from time to time to have warrants signed. It just wasn't important enough to them and seems to be a product of malice and ill-will toward Angela." *Id.*

8

degree of flexibility." *Id*. at 56, 111 S.Ct. at 1670. *See also Jones v. Lowndes County, Mississippi*, - - - F.3d- - -, 2012 WL 1322914, at *2 (5th Cir. April 18, 2012)(noting that the 48 hours is a "significant marker" but explaining that a determination of probable cause after 48 hours is not always unreasonable and does not in and of itself violate *McLaughlin*).

The forty-eight hours runs from the time the suspect is arrested until a judicial officer makes a probable cause determination. *Deaton v. McMillin*, No. 3:08-cv-763-DPJ-FKB, 2012 WL 393087, at *6 (S.D. Miss. Feb. 6, 2012) (internal citation omitted). Here, Covington was "put in her cell at about 9:30 or 10:00 the night of December 21." [Docket No. 21], at 2. However, it was not until December 26, 2007 that she was brought before Justice Court Judge Goodman for an initial appearance and charged with "aiding a felon escapee." *Id*. The Court concludes, then, that Judge Goodman's probable cause determination occurred on December 26, 2007–well after the 48 hour period expired. Understanding its burden, Kemp begs the Court to consider the "extraordinary circumstances [lead investigator] Kufel faced with the escape, the weekend and the Christmas holidays." [Docket No. 18], at 12-13. Specifically, Kemp argues that "based on his [Kufel's] 19 years of experience as a Clarke County law enforcement officer, Kufel knew that the courthouse was closed and that the justice court judges had already left for the holidays." [Docket No. 23 at 5].

In determining whether the state has met its burden, the Court finds instructive the recent case of *Jones*, *supra*. There it was undisputed that more than 48 hours lapsed before the criminal defendants received a determination of probable cause. 2012 WL 1322914, at *2. But, the court declined to reach the merits of the argument concerning whether there was a constitutional deprivation because plaintiffs failed to show that the defendant was liable for the alleged deprivation. *Id.*, *citing Ashwander v. Tenn.*

*Valley Auth.*, 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936)(Brandeis, J., concurring).  The court explained:

> A Section 1983 claimant must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation.  If the defendant is a municipality or other body of local government, the alleged deprivation must be connected to a government custom, policy statement, ordinance, regulation, or decision officially adopted and promulgated by the body's officers.  Although municipalities are not vicariously liable for violations committed by their employees, they are liable whenever their official policies cause their employees to violate another person's constitutional rights, and for actions taken by an official with final policymaking authority in that area.  A supervisor is not personally liable for his subordinate's actions in which he had no involvement.

*Id.* (quotations and citations omitted).

In the instant matter, according to Sheriff Kemp, it was the policy of Clarke County to take an arrestee before a judge for an initial appearance or bond hearing within 48 hours of his arrest. [Docket No. 17-3], at 28.  In fact, he alleges that investigating officers, who are responsible for contacting the judges to arrange the initial appearance, "know that [Kemp is] a stickler about getting people a bond set in a timely manner and them out of jail if they're able to make bond." *Id.*, at 29.  Although Kemp participated and even conducted Covington's interview, Kufel signed the charges against Covington and told the jailer to place her in custody. *Id.*, at 26. [Docket No. 17-2], at 17 (Kufel testified in his deposition that it was Kemp's decision to place Covington under arrest).

In response, Covington has not demonstrated how the sheriff's policy of allowing the investigating officers to arrange for the initial appearance within 48 hours was the moving force behind the delay or otherwise caused the violations of his constitutional right.  This failure forecloses on her right to recover against Clarke County.  While it is true that Kufel never even attempted to contact a

10

justice court judge,[6] Covington has pointed to no evidence which establishes that Kemp was aware that Kufel had not carried out Clarke County's policy to indeed provide initial appearances within 48 hours. Nor has she pointed to evidence of a policy that authorizes Kufel to refuse to contact a justice court judge. There is no dispute that Kemp is the policymaker for Clarke County, but it was Kufel's case and his responsibility - - not Kemp's - - to get Covington before the justice court judge. [Docket No. 17-3], at 29-30. Indeed, at best, Covington has established that Kufel violated the policy of the county.[7]

Unlike in *Gerstein* and *McLaughlin*, the two cases upon which Covington primarily relies, Covington has produced no evidence of a history or policy of the Clarke County Sheriff Department of not seeking a justice court judge's review if the need arose at inconvenient times. As explained in *Brown*, *supra*, "[i]n both *Gerstein* and *McLaughlin*, objectionable policies at the state and county level were the moving force behind those opinions." 675 F.3d at 479.

Although neither party cites *Deaton v. McMillin*, No. 3:08cv763-DPJ-FKB, 2012 WL 393087 (S.D. Miss. Feb. 6, 2012), that case too is instructive. There, Judge Jordan correctly found that Hinds County breached its obligations to have a probable cause determination for arrested individuals within

---

[6] Kufel explained that he did not even attempt to contact a justice court judge because it was leading up to the Christmas holidays. Covington was not arrested until 9:30 or 10:00 on the night of Friday, December 21. [Docket No. 21], at 2. Monday, December 24 (Christmas Eve), had been declared a state holiday. Tuesday, December 25 (Christmas), was the official holiday, and the courthouse did not open until Wednesday, December 26. "Our judges," explained Kufel, "usually on the holidays are out of pocket. We've never been able to reach them before." [Docket No. 17-2], at 18. In addition, earlier in the evening when Kufel had gone to the Justice Court Judge Goodman to obtain a warrant for the arrest of Kostick, the judge told him that he "was going to be out visiting his children and grandchildren through the holidays," *see*, [Docket No. 17-2], at 32, while he knew that the other justice court judge "would be spending his time in Biloxi." *Id.*, at 31. And despite having talked to Judge Goodman earlier in the evening, Kufel did not even try to give Covington the opportunity to get before a judge or otherwise have the justice court judge determine whether probable cause existed for her arrest. *Id.*, at 20. This determination could have been made in a nonadversary proceeding, on hearsay and written testimony. *Gerstein*, 420 U.S. at 120, 95 S.Ct. 854.

[7] The Court also notes that to the extent Covington contends that she has brought this suit against Kemp in his individual capacity (a point she has not argued), that claim must be dismissed. She has not shown any actions taken by Kemp which caused her hearing to occur outside of 48 hours and, further, there is no supervisor liability against Kemp for Kufel's actions. *Jones*, 2012 WL 1322914, at *2.

48 hours. The evidence there established that there was no attempt to even find a magistrate because the defendant was arrested on a Friday night and the policy of the county, in contravention of *McLaughlin*, excluded intervening weekends from the 48 hour calculation. *Id*. at *6. Moreover, the policymaker Sheriff McMillin knew that persons were regularly held beyond the 48 hour period because of the difficulty of finding a judge on the weekend, and the County's Rule 30(b)(6) designee further explained that probable cause affidavits are filed on Mondays because the courthouse is closed on the weekends. Therefore, in the county's view, the 48 hours began to run from the filing of the affidavit. *Id*. "In sum," as explained by Judge Jordan, "the County's policymaker and it 30(b)(6) designee offered unrebutted testimony of a widespread practice that was the 'moving force' behind the alleged constitutional violation." *Id*.

Here it is uncontested that it is Clarke County's policy to provide initial appearances within forty-eight hours of an arrest. In the absence of a policy or custom of delaying initial appearances beyond forty-eight hours, Kemp (Clarke County) is entitled to summary judgment.[8]

Inhumane Living Conditions

Plaintiff has not responded to the arguments asserted by the defendant on this claim. In the face of a dispositive motion on such claim the responding party has an obligation to address those arguments. "Failure to address a claim results in the abandonment thereof." *Sanders v. Sailormen*, *Inc.*, No. 3:10cv0060CWR-LRA, 2012 WL 663021 (S.D. Miss. Feb. 28, 2012)(citing *In re Entringer Bakeries, Inc.*, 584 F.3d 344, 347 n.1 (5th Cir. 2008)).

---

[8] Miss. Unif. Cir. and Cnty. Ct. R. 6.03 which Covington cites, provides that the initial appearance is the occasion for the determination of probable cause. It provides that "[e]very person in custody shall be taken, without unnecessary delay and within 48 hours of arrest, before a judicial officer or other person authorized by statute for an initial appearance." As explained in *Brown*, "[i]f this state rule creates procedures that are different from the obligations arising from *Gerstein* and *McLaughlin*, then they too, without more, are not the basis for a Section 1983 claim." *Brown v. Sudduth*, 675 F.3d 472 (5th Cir. 2012).

## V. CONCLUSION

None of the pled, non-waived arguments by Angela Covington persuades against granting the motion for summary judgment in favor of Kemp. The plaintiff has failed to create a genuine issue of material fact on either of the claims she asserts. She has failed to demonstrate that her arrest was without probable cause, and she has not shown that the policy of the county was the moving force behind her failure to receive a determination of probable cause within 48 hours of her arrest.

Therefore, Kemp's motion for summary judgment is GRANTED. A Final Judgment will be entered on this day to dismiss her claims with prejudice.

SO ORDERED, this the 26th day of June, 2012.

                                          s/Carlton W. Reeves
                                          UNITED STATES DISTRICT JUDGE